AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung cellular phone,<br>FPF# 2020250400109901 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   20MJ0742

FILED
FEB 1 8 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952, 960 | Importation of a Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian M. Goulart, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _2/18/20_

City and state: __San Diego, California__

_____
*Judge's signature*

Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT**

I, Special Agent Brian M. Goulart, being duly sworn, hereby state as follows:

### **INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Samsung phone
>
> IMEI No. 352005/09/016085/7
>
> Seized as FP&F No. 2020250400109901
>
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Jesus David SANCHEZ Solis ("Defendant") for importing approximately 29.82 kilograms (65.60 pounds) of methamphetamine; 1.06 kilograms (2.33 pounds) of heroin; and 1.02 kilograms (2.24 pounds) of fentanyl from Mexico into the United States.  The Target Device is currently in the evidence vault located at 9495 Customhouse Plaza, San Diego, CA 92154.

2.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

### **BACKGROUND**

3.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since September 2018. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.     During my tenure with HSI, I have participated in the investigation of various

1

narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation.   When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.   On February 14, 2020, at approximately 4:45 AM, Jesus David SANCHEZ Solis, ("SANCHEZ"), a permanent resident, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in vehicle lane #24.  SANCHEZ was the driver, sole occupant, and registered owner of a 1990 Chevrolet Silverado ("the vehicle") bearing California license plates.

8.   A Customs and Border Protection Officer (CBPO) observed fresh tampering, handprints and smudges on the gas tank. SANCHEZ informed the CBPO

3

that there had been recent work done on the gas tank. The CBPO received two negative Customs declarations from SANCHEZ. SANCHEZ stated he was crossing the border to go to Santee, California.

9.     A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the gas tank of the vehicle.

10.     A CBPO operating the Z-Portal X-Ray machine detected anomalies in the gas tank of the vehicle.

11.     Further inspection of the vehicle resulted in the discovery of 39 total packages concealed in the gas tank of the vehicle. 36 of the packages contained a substance, a sample of which field tested positive for the characteristics of methamphetamine, with a total approximate weight of 29.82 kgs (65.60 lbs.); one (1) of the packages contained a substance, a sample of which field tested positive for the characteristics of heroin, with a total approximate weight of 1.06 kgs (2.33 lbs.); and two (2) of the packages contained a substance, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 1.02 kgs (2.24 lbs.).

12.     SANCHEZ was placed under arrest at approximately 8:40 AM.

13.     During a post-Miranda interview, SANCHEZ admitted that he was going to be paid an undetermined amount of currency to smuggle the narcotics into the United States. SANCHEZ claimed that this was his first-time smuggling narcotics into the United States. SANCHEZ stated he has a significant amount of debt and smuggled the drugs to earn money to help pay off some of the debt. SANCHEZ provided the vehicle to unidentified members of a drug trafficking organization. SANCHEZ stated he knew the drugs were in the gas tank of the vehicle. SANCHEZ claimed that he was to receive a phone call from the unidentified members of the DTO once he was in the United States and that they would provide him with a location of where to meet. SANCHEZ was shown the target device during the interview and admitted that it was his phone.

14. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on January 14, 2020, up to and including February 14, 2020.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

1  equivalents and store information in volatile memory within the device or in memory cards
2  inserted into the device. Current technology provides some solutions for acquiring some of
3  the data stored in some cellular telephone models using forensic hardware and software.
4  Even if some of the stored information on the device may be acquired forensically, not all
5  of the data subject to seizure may be so acquired. For devices that are not subject to forensic
6  data acquisition or that have potentially relevant data stored that is not subject to such
7  acquisition, the examiner must inspect the device manually and record the process and the
8  results using digital photography. This process is time and labor intensive and may take
9  weeks or longer.

10      16.    Following the issuance of this warrant, I will collect the Target Device and
11  subject it to analysis. All forensic analysis of the data contained within the telephone and
12  its memory cards will employ search protocols directed exclusively to the identification
13  and extraction of data within the scope of this warrant.

14      17.    Based on the foregoing, identifying and extracting data subject to seizure
15  pursuant to this warrant may require a range of data analysis techniques, including manual
16  review, and, consequently, may take weeks or months. The personnel conducting the
17  identification and extraction of data will complete the analysis within 90 days, absent
18  further application to this court.

19                     **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

20      18.    Law enforcement has not previously attempted to obtain the evidence sought
21  by this warrant.

22                                  **CONCLUSION**

23      19.    Based on the facts and information set forth above, I submit there is probable
24  cause to believe that a search of the Target Device will yield evidence of Defendant's
25  violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I
26  request that the Court issue a warrant authorizing law enforcement to search the item
27  described in Attachment A and seize the items listed in Attachment B using the above-
28  described methodology.

1

2 I swear the foregoing is true and correct to the best of my knowledge and belief.

3

4                                  

5                                 Special Agent Brian M. Goulart
                                Homeland Security Investigations

6

7 Subscribed and sworn to before me this 18th day of February, 2020.

8

9

10 Honorable Karen S. Crawford
United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Samsung phone
> IMEI No. 352005/09/016085/7
> Seized as FP&F No. 2020250400109901
> (the "Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, 9495 Customhouse Plaza, San Diego, CA 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 14, 2020, up to and including February 14, 2020:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine, heroin and/or fentanyl, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.